1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL HUTCHINSON,                    )
                                      )
            Plaintiff,                )        CASE NO. C05-1547-JCC
                                      )
       v.                             )        REPORT AND
                                      )        RECOMMENDATION
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                      )
            Defendant.                )
_____)

        Plaintiff Daniel Hutchinson appeals to the District Court from a final decision of the

Commissioner of the Social Security Administration (the "Commissioner") denying his

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

For the reasons set forth below, it is recommended that this matter be reversed and remanded for

an award of benefits.

I. PROCEDURAL HISTORY

        On April 26, 2001, plaintiff filed for Supplemental Security Income ("SSI") and DIB,

alleging disability since March 1, 1993. Tr. 75. Plaintiff's applications were denied initially,

however, on reconsideration the Commissioner found that plaintiff was disabled as of April 2001

for purposes of his SSI application but was not disabled for purposes of his DIB application. Tr.

29-32, 20. Plaintiff timely requested an administrative hearing. Tr. 42. On December 9, 2003,

REPORT AND RECOMMENDATION
PAGE - 1

1   Administrative Law Judge ("ALJ") Marguerite Schellentrager held a hearing and heard testimony

2   from plaintiff and medical expert Norman Gustavson, Ph.D.  Tr. 290-334.  On March 10, 2004,

3   the ALJ issued a decision written finding that plaintiff was disabled as of April 26, 2001, but that

4   he did not have a severe impairment prior to his date last insured of December 31, 1998.  Tr. 20-

5   26.  Plaintiff appealed the ALJ's decision to the Appeals Council which declined to review

6   plaintiff's claim.  Tr. 6-9.  Plaintiff appealed this final decision of the Commissioner to this Court.

7                              II.  THE PARTIES' POSITION

8           Plaintiff requests that the Court remand this case for an award of benefits or, in the

9   alternative, for further proceedings to correct the ALJ's legal errors.  Plaintiff argues that the

10  ALJ erred by: (1) requiring pre-date-last-insured evidence of disability; (2) erroneously rejecting

11  the opinion of medical expert Norman Gustavson, Ph.D., that plaintiff was disabled at step three

12  before his date last insured; and (3) failing to follow the mandatory method for evaluating

13  plaintiff's mental impairment.  The Commissioner asserts that the ALJ's decision is supported by

14  substantial evidence and free of legal error.

15                              III.  STANDARD OF REVIEW

16          The court may set aside the Commissioner's denial of social security disability benefits

17  when the ALJ's findings are based on legal error or not supported by substantial evidence in the

18  record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

19  defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

20  as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*,

21  881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

22  conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

23  1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation,

24  it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639,

25
    REPORT AND RECOMMENDATION
26  PAGE - 2

1  642 (9th Cir. 1982).

2  ### IV. EVALUATING DISABILITY

3  The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d

4  1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial

5  gainful activity by reason of any medically determinable physical or mental impairment, which

6  can be expected to result in death, or which has lasted or can be expected to last for a continuous

7  period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

8  The Social Security regulations set out a five-step sequential evaluation process for

9  determining whether the claimant is disabled within the meaning of the Social Security Act. *See*

10  20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that he or she is not

11  engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two,

12  the claimant must establish that he or she has one or more medically severe impairments or

13  combination of impairments. If the claimant does not have a "severe" impairment, he or she is

14  not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner will

15  determine whether the claimant's impairment meets or equals any of the listed impairments

16  described in the regulations. A claimant who meets one of the listings is disabled. 20 C.F.R. §§

17  404.1520(d), 416.920(d).

18  At step four, if the claimant's impairment neither meets nor equals one of the impairments

19  listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity

20  and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§

21  404.1520(e), 416.920(e). If the claimant is not able to perform his or her past relevant work, the

22  burden shifts to the Commissioner at step five to show that the claimant can perform some other

23  work that exists in significant numbers in the national economy, taking into consideration the

24  claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§

25

26  REPORT AND RECOMMENDATION
PAGE - 3

404.1520(f), 416.920(f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was 47-years-old on the day of his hearing.  Tr. 296.  He graduated from high school and later attended one year of community college.  Tr. 296.  Plaintiff worked as a sheet metal journeyman at a shipyard and at a heating and air conditioning company from 1978 until 1993.  Tr. 89.  Because the parties have adequately summarized the record in their briefing, the Court will not summarize the record here.  Relevant evidence will be incorporated into the decision.

## VI.  THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date of December 1, 1998.  Tr. 25.  At step two, the ALJ found that plaintiff had no severe impairments prior to his date last insured of December 31, 1998, but found that he had a severe impairment of paranoid schizophrenia disorder beginning on April 26, 2001.  Tr. 25.  At step three, the ALJ found that plaintiff's paranoid schizophrenia disorder met Listing 12.03, and that he is therefore disabled beginning April 26, 2001.  Tr. 25.

## VII.  DISCUSSION

A.      The ALJ's determination that plaintiff's paranoid schizophrenia disorder was not severe on or before December 31, 1998, is not supported by substantial evidence.

Plaintiff argues that the ALJ erred in failing to find that he had a severe impairment of paranoid schizophrenia at step two as of December 31, 1998, the date he was last insured to

REPORT AND RECOMMENDATION
PAGE - 4

1   receive disability benefits.[1]  At step two, plaintiff must show that he has an impairment or

2   combination of impairments which significantly limit his physical or mental ability to perform

3   basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§

4   404.1520(c), 416.920(c).  Here, the ALJ disregarded plaintiff's allegation of mental disorder

5   because he had no mental health records to support his allegation prior to April 2001.

6   Specifically, the ALJ found that plaintiff's "alleged impairments and symptoms are not well

7   supported by any medically acceptable clinical and laboratory diagnostic techniques prior to the

8   date that he was last insured.  Consequently, the undersigned finds that the claimant has not

9   demonstrated any medically determinable physical impairment or other condition that was a

10  severe impairment on and before the date his insured status expired."  Tr. 24.  The ALJ,

11  however, erroneously focused on the date of diagnosis rather than on the date of onset of the

12  disability and improperly discounted evidence of mental impairment that post-dated the date he

13  was last insured.

14      On August 9, 1999, plaintiff was evaluated by Jamal Gwathney, M.D., a treating

15  physician, for anxiety, depression, and anger management.  Tr. 157, 203.  Plaintiff reported that

16  he had depression and anger management issues for many years prior to seeing Dr. Gwathney.

17  *Id*.  Dr. Gwathney diagnosed panic attacks, anger management issues, depression, and possible

18  bipolar or hypomanic.  Tr. 151, 153.  Plaintiff was prescribed nortriptyline for his headaches

19  which improved his symptoms.  Tr. 203, 325.

20      On August 3, 2001, plaintiff was evaluated by David Sandvik, M.D., a treating physician.

21  Tr. 178-80.  Plaintiff reported severe depression for nine years, suicide attempts, anger

22  management issues, 22 arrests, and multiple judicial orders to seek anger management therapy.

23

24      [1]Plaintiff was insured for disability benefits under the Social Security Act through
    December 31, 1998.  Tr. 21.

25

26  REPORT AND RECOMMENDATION
    PAGE - 5

1   Tr. 180.  Plaintiff suffered from a history of difficult upbringing and much childhood violence.

2   *Id.*  Dr. Sandvik diagnosed dysthymia, history of depression currently in remission, anxiety

3   disorder, and personality disorder with anger management problems.  Tr. 180.  He rated

4   plaintiff's Global Assessment of Functioning ("GAF") at 50, indicating serious symptoms.  *Id.*

5          On August 18, 2001, plaintiff began seeing counselors at Compass Health.  Tr. 221-25.

6   They diagnosed depression and anxiety disorders with a GAF of 50.  Tr. 221.  Plaintiff reported

7   that he had depression since 1974 that had gotten progressively worse, suicidal ideation 18

8   months ago, anger and past violence, and that he had received no mental health treatment.  Tr.

9   222.  The Compass Health medical reports indicate that plaintiff has significant limitations in

10  functioning.  Tr. 23, 204-25.

11         In September 2001, DDS consultant Terilee Wingate, Ph.D., noted that there was

12  insufficient psychological medical evidence records prior to plaintiff's DLI of December 31,

13  1998, but opined that plaintiff suffered from dysthymic disorder, personality disorder with

14  significant anger control problems, multiple assault charges, social problems, self-destructive

15  behavior, and had moderate mental limitations in all areas.  Tr. 182-200. In May 2002, DDS

16  consultant John Robinson, Ph.D., also noted that there was insufficient psychological medical

17  evidence records prior to December 31, 1998, but opined that the medical records support

18  insidious worsening of bipolar disorder that met listing 12.04 beginning approximately April 1,

19  2001.  Tr. 226-238.

20         At plaintiff's hearing, medical expert Norman Gustavson, Ph.D., testified that there was

21  not an accurate diagnosis in the record, but believed that plaintiff has paranoid schizophrenia

22  which meets the criteria of listing 12.03.  Dr. Gustavson acknowledged that the medical records

23  evidence does not support that conclusion prior to 2001.  Tr. 325.  However, Dr. Gustavson

24  noted that plaintiff testified that his symptoms began in the late 1980's, 1987 or 1988, and stated

25

26  REPORT AND RECOMMENDATION
    PAGE - 6

that "I don't doubt that given his age, the symptoms probably go back that far." Tr. 326.  He

testified that paranoid schizophrenia does not come on overnight, but usually begins in the late

teens to late 20's.  Tr. 329.  When asked by plaintiff's counsel whether plaintiff met the listing for

paranoid schizophrenia as of December 1, 1998, Dr. Gustavson unequivocally replied "Yes."  Tr.

330.

"It is well-established [] that the significant date for disability determination is the date of

onset of the disability, not the date of diagnosis or the DLI."  *Morgan v. Sullivan*, 945 F.2d

1079, 1081 (9th Cir. 1991); *see also* SSR 83-20.  This is especially true for mental impairments,

which unlike physical impairments, are progressive in nature and whose onset dates may be

elusive."  *See id.*  Social Security Ruling ("SSR") 83-20 provides in relevant part as follows:

> With slowly progressive impairments, it is sometimes impossible to obtain medical
> evidence establishing the precise date an impairment became disabling.  Determining
> the proper onset date is particularly difficult, when, for example, the alleged onset and
> the date last worked are far in the past and adequate medical records are not
> available.  In such cases, it will be necessary to infer the onset date from the medical
> and other evidence that describe the history and symptomology of the diseases
> process.
> . . .
> In some cases it may be possible, based on the medical evidence to reasonably infer
> that the onset of a disabilling impairment(s) occurred some time prior to the date of
> the first recorded medical examination, e.g., the date the claimant stopped working.
> How long the disease may be determined to have existed at a disabling level of
> severity depends on an informed judgment of the facts in a particular case.  This
> judgment, however, must have a legitimate medical basis.  At the hearing, the
> administrative law judge should call on the services of a medical advisor when onset
> must be inferred.

SSR 83-20.  The Ninth Circuit has held, based on SSR 83-20, where medical inferences

regarding the onset date of disability need to be made, the ALJ *must* call a medical expert to

obtain medical testimony regarding the onset date.  *Morgan*, 945 F.2d at 1082; *see also*

*Armstrong v. Comm'r of the Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).  Where

medical testimony is unhelpful, the ALJ can fulfill his or her responsibility by exploring lay

evidence, including the testimony of family, friends, or former employers to determine the onset

REPORT AND RECOMMENDATION
PAGE - 7

1    date.  *Id*.  Although plaintiff has the burden to prove disability before his disability insured status

2    expired, the ALJ has the duty to assist in developing the record to determine the onset date of

3    plaintiff's disability.  *Id*.  In addition, although the ALJ is not bound by the medical expert's

4    opinion, the ALJ must treat that opinion as expert opinion and accord it appropriate weight.

5    SSR 83-19.

6        Here, plaintiff's mental impairment was a slowly progressive one and the ALJ was

7    required to make a retroactive inference regarding the onset of disability, and, thus, SSR 83-20

8    applied.  While the ALJ properly called medical expert Dr. Gustavson, to assist in establishing

9    the onset date of plaintiff's disability, the ALJ rejected his opinion that plaintiff was disabled due

10   to lack of medical evidence.  Tr. 23.  Specifically, the ALJ stated,

11       Dr. Gustavson was asked when the claimant's severe impairment began, and his
         testimony was a bit equivocal.  He thought that it probably started in the late 80's,
12       and that such an impairment usually started in one's teens or early 20's.  But he
         admitted that the record supported this condition only as of 2001.  Dr.
13       Gustavson's statements are carefully considered, and his assessment of the
         claimant's functioning since 2001 may well be valid.  But as discussed above, the
14       medical evidence lacks objective findings to supporting [sic] the existence of a
         severe mental impairment prior to the date the claimant was last insured. . . . The
15       general lack of any medical intervention does not corroborate a severe mental
         impairment during the time that the claimant was insured for Title II.

16
17   Tr. 23.  I find it was legal error for the ALJ to disregard plaintiff's allegation of mental

18   impairment prior to his DLI based on lack of contemporaneous medical evidence rather than

19   applying SSR 83-20 to infer the onset date of his disability.  While the ALJ's determination that

20   plaintiff was disabled in April 2001 is supported by medical evidence, that was not necessarily the

21   date on which he became disabled.  The ALJ was not free to rely solely on the absence of

22   medical evidence to support her onset determination.  Instead, under SSR 83-20, she was

23   required to consult a medical expert to provide a "legitimate medical basis" for the onset date

24   selected.  "The fact that pre-DLI medical reports or clinical tests may not exist does not diminish

25   the ambiguity regarding onset date or relieve the ALJ of his duty to develop the record with

26   REPORT AND RECOMMENDATION
     PAGE - 8

respect to this period." *Quarles v. Barnhart*, 178 F. Supp. 2d 1089, 1097 (N.D. Cal. 2001).

"This case is similar to others in which a diagnosis of mental disorder does not occur until after

the DLI, or in some cases, following a claimant's application for benefits." *Id.*; *see also Speight*

*v. Apfel*, 108 F. Supp. 2d 1087, 1092 (C.D. Cal. 2000); *Armstrong*, 160 F.3d at 590. The mere

fact that there were no pre-DLI psychiatric records or diagnosis does not mean that plaintiff was

not disabled prior to December 31, 1998. *See id.*

In general, more weight should be given to the opinion of a treating physician than to a

non-treating physician, and more weight to the opinion of an examining physician than to a non-

examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not

contradicted by another physician, a physician's opinion may be rejected only for "clear and

convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

Where contradicted, a physician's opinion may not be rejected without "'specific and legitimate

reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Here, the ALJ's reasons for rejecting Dr.

Gustavson's opinion were neither "clear and convincing" nor "specific and legitimate," nor were

the ALJ's reasons based on substantial evidence in the record as a whole.

The testimony of Dr. Gustavson clearly indicates that on and before the date plaintiff was

last insured he had a paranoid schizophrenia disorder which met listing 12.03. The medical

diagnosis of paranoid schizophrenia disorder, though retrospective, was corroborated by two lay

witnesses who stated that plaintiff exhibited symptoms in 1989-1990. Tr. 97, 108. In addition,

treatment notes from Dr. Gwathney, Dr. Sandvik, and Compass Health, indicate that plaintiff had

a long history of mental impairment. The ALJ relied heavily on reports of DDS non-testifying,

non-examining consultants, both of whom concluded that there was insufficient evidence to make

a determination of mental impairment prior to December 31, 1998. However, neither DDS

REPORT AND RECOMMENDATION
PAGE - 9

1 consultant found that plaintiff did not have a medically determinable impairment prior to

2 December 31, 1998, but merely found insufficient evidence. Furthermore, neither DDS

3 consultant was called upon to make medical inferences regarding the onset date based on SSR

4 83-20. Accordingly, I conclude that the ALJ's determination of the onset date was not based on

5 a "legitimate medical basis," and therefore was not an "informed judgment of the facts." *See*

6 SSR 83-20.

7 　　　When the Commissioner's decision is not supported by substantial evidence, the Court

8 has the discretion to affirm, modify, or reverse the Commissioner's decision with or without

9 remanding the cause for further proceedings. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th

10 Cir. 2002). The Court may direct an award of benefits if the record has been fully developed and

11 further administrative proceedings would serve no useful purpose. *Id.* "Such circumstances

12 arise when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's

13 evidence; (2) there are no outstanding issues that must be resolved before a determination of

14 disability can be made; and (3) it is clear from the record that the ALJ would be required to find

15 the claimant disabled if he considered the claimant's evidence." *Id.* (citing *Rodriguez v. Bowen*,

16 876 F.2d 759, 763 (9th Cir. 1989)(crediting treating physician's testimony and awarding

17 benefits); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)(crediting subjective symptom

18 testimony and awarding benefits); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)(same). In

19 the present case, crediting Dr. Gustavson's testimony as true, it is clear from the record that the

20 ALJ would be required to find plaintiff disabled beginning December 1, 1998. Accordingly, the

21 Court recommends that this matter be reversed and remanded for an award of benefits.[2]

22

23 　　　[2]Having determined that the ALJ's decision must be vacated for failure to accord
appropriate weight to the opinion of the medical expert concerning the onset date, the Court need

24 not reach the issue of whether the ALJ erred by failing to employ the proper evaluation technique
under 20 C.F.R. § 404.1520a.

25

26 REPORT AND RECOMMENDATION
PAGE - 10

1

## VIII.  CONCLUSION

2   For the foregoing reasons, I recommend that the final decision of the Commissioner be

3 reversed and remanded for the purpose of awarding disability insurance benefits for the period

4 beginning December 1, 1998.  A proposed Order accompanies this Report and Recommendation.

5

6   DATED this 8th day of May, 2006.

7

8

9

10            MONICA J. BENTON
            United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 REPORT AND RECOMMENDATION
 PAGE - 11